And we'll hear our argument next in Duvall v. County of Ontario, 21-2917. Please go ahead. Good morning, your honors. Jason D'Aponzio appearing on behalf of the appellant county of Ontario. The courts below erred in excluding the debtor's interest in an annuity worth more than $1 million from an insolvency analysis. You didn't complain in time. Your honor, if we were here, if the county was a creditor seeking to have that annuity liquidated. You didn't complain in time and you are somebody who went after this person because she didn't act in time. And it is a mighty remarkable argument to come in and tell us that you have a right to go beyond your time after you went after her in her time. Your honor, there are two points to your argument. Initially, the purpose of bankruptcy exemptions and the purpose of rule 4003 is to have a swift adjudication of what assets are exempt from the claim of creditors. So, and that takes place as of the date of bankruptcy filing. That's the determination of insolvency. That's the determination as to what property is exempt. The county is not a creditor seeking to be paid out of the proceeds of the annuity. That's a totally different scenario. What we are seeking is we're seeking the definition of insolvency as of a date two years prior. Our operative date is March 7th of 2017. This bankruptcy filing did not occur until March 1st of 2019. Are you not a party in interest? I'm sorry, your honor? Are you not a, I mean, you started off by saying you're not a creditor. Are you not a party? Wasn't the county a party in interest? As we are, yes, because we were sued in an adversary proceeding that was then filed about a month and a half after the bankruptcy filed. So, 4003 refers to a party in interest. Refers to a party in interest. However, only if a party in interest is seeking to be paid out of, if they're challenging the claim of exemption to an asset. Making the argument that that asset should be made available to payment of creditor claims. I'm sorry, please, please respond to presiding judge's question. And in this instance, we're not seeking to be paid out of this asset. In this instance, as of the date of the bankruptcy filing, the county's tax lien had been paid in full. Isn't your only real argument that the district, that the bankruptcy court was incorrect in saying that section 550 applies. Because this was to the benefit of creditors rather than just to the benefit of a debtor. Because as to the other thing, as to whether there was insolvency or not, there were no assets to yet of appropriate time. All the other requirements for a fraudulent transfer are there. And there was insolvency, assuming that you didn't step in in time and say that the annuity should have been included. And that the Supreme Court has told us very clearly, don't let it in. So your main argument has to be that somehow the district court was, the bankruptcy court was incorrect in saying that this could benefit creditors rather than just the debtor herself. Your Honor, that is one of the county's arguments that's been briefed. However, getting back to the point regarding the exemption issue. The insolvency analysis needed to take place two years prior. The annuity, which was awarded as of a personal injury lawsuit against the state of New York, when the debtor was a young adult or a young teenager, existed as of that date that the interim foreclosure judgment had been entered. That's our operative date. And then in the two years that transpired in between the date of the interim foreclosure judgment and the date of the filing of the bankruptcy, the debtor applied to have a portion of that annuity liquidated and cashed in. She received about, and the record indicates, about $137,000 out of that annuity. That is not relevant to whether she was insolvent as of the appropriate time because she didn't have that money. So the question then is, was it appropriate for that to happen or not? And that depends on what you did during the time when you could come in and say that this annuity, which, Your Honor, on the merits I think you're probably right, wasn't totally, but you didn't ask her to be- Your Honor, let's look at the timing because you raise a good point that- That we had the adversary proceeding commenced in April of 2019. Bankruptcy filing took place on March 1st. Statute of limitations to file, it was two years after the date of the judgment. Statute of limitations was going to expire in six days. And then two weeks later, they filed their bankruptcy schedules in which this annuity was raised an exempt asset. At that point in time, the county is not a party to litigation. The county is not a secured creditor even because our secured lien had been satisfied as a result of the foreclosure. And then we fast forward, the adversary proceeding is filed in late April, early May, the county is served on May 3rd. In the meantime, the 341 meeting of creditors closed on April 16th, I believe it was. But you didn't attend, your client didn't attend the meeting of the creditors. Your Honor, no it did not, however- It had notice. The county is listed as a creditor on these things constantly. In fact, there's two files that when I get back to the office in Rochester that I have to address with my client. Are we going to file objections to exemptions shooting in the dark? We have no discovery. Discovery didn't take place in this adversary proceeding. Yes, but you could perfectly well have come in and said, you knew what this annuity was. You knew what it was for. You could perfectly well have come in and said so. Your Honor, according to the exemption schedule, the debtor claimed that it was exempt as being compensation for lost wages. We didn't have a copy of the annuity. We didn't have any of the underlying documents. We didn't receive any of the underlying documents until we were in discovery. An annuity of over a million dollars for lost wages is at least suggestive that you might come in and say, hey, what's going on when the claim was one of a sexual harassment and other things of that sort. I mean, again, what is reasonable for people to figure out? Your Honor, exactly, what is reasonable for people to figure out, including potential defendants in an adversary proceeding? The county was involved in another case similar to this a couple of years prior where the county foreclosed, the debtor filed bankruptcy, the debtor threatened, we're going to sue you under section 548 and have this foreclosure undone. So every few months we would get a letter from the debtor's attorney saying- By the way, you are aware, of course, that the Supreme Court is currently dealing with a case. Yes. Which deals with this kind of behavior. Tyler V Hennepin County. The Minnesota case. We are waiting. And that even if we were to buy your arguments, we then would probably have to wait to see whoever the Supreme Court says. Although, Your Honor- Is there a takings or incessant fines issue? There's not a takings clause. What Tyler could potentially do is bring us back here under the Gonzales case that we were here about in December of 2021. Because what Tyler V Hennepin County is challenging is the strict foreclosure. Yeah. In rem foreclosure process that Minnesota follows, which sounds like it's very similar to New York's. So if the Supreme Court winds up finding that Minnesota's- Is that, what was that issue in Gonzales? It's under Gonzales was whether the presumption under BFP versus Resolution Trust, which states that mortgage foreclosures are not subject to overturning under a fraudulent conveyance theory under Section 548. That it's entitled to a presumption of reasonably equivalent value. The argument was made by the county in Gonzales that a tax foreclosure should be afforded that same presumption. This circuit rejected that argument. And in fact, we didn't raise that argument in this appeal. Even a tax foreclosure that seeks more money than the town is owed. So my question that I wanted to ask you at the outset, looking at A198, the appendix, which was the Chapter 13 filing. The debtor indicated in the Chapter 13 filing that it would bring an adversarial proceeding to undo the default judgment of foreclosure on the property. Pursuant to the bankruptcy code 548, upon avoidance of the transfer, the debtor will pay all money owed to Ontario County approximately 42,000. At the time of the foreclosure, the debt, I think, was around 22,000. The equity in the property was about 91,000. So in New York, apparently, you can foreclose, the county can foreclose on a property and get a windfall, if you will. Even if the tax is less than the equity. So my question is, how is the county harmed when right in the Chapter 13 filing, the debtor indicates it will pay all of the money that's owed to the town. And now it's 42,000 in tax, and seek to keep the property which has greater equity. I mean, how, and just in terms of fairness, you're standing here asking us to, in essence, give you property that's worth far more than what the town is owed. Your Honor, to your point- If I may say so, the judge made my first statement more politely than I did. Your Honor, to your point, the New York legislature enacted Article 11 back in 1994. At the time, any municipalities that already had a foreclosure process under their county charter or local law could opt out of Article 11 and continue to follow their own charter. Ontario County did not have its own collection procedure, so it was forced to follow Article 11 of the New York Real Property Tax Law. The New York Real Property Tax Law, that the strict foreclosure scheme has been reviewed by the Court of Appeals. And actually, a similar process was reviewed by the United States Supreme Court in Nelson v. City of New York. In that case, it was just a small water charge that was worth much- But now it's being revisited. It's being revisited again. And actually, what may wind up happening is that if New York has to revamp Article 11 to provide for But why, in such a context, isn't it perfectly appropriate for us to read everything as narrowly against you? And require you to have done everything absolutely right when the other result doesn't make any sense. And so say, you should have come in by that time, you had enough notice to do that. The timing is this and that. It is, if the equities were different, maybe we could read what you're doing differently. But with these equities, where you are asking for more than you have a right to, which you were given a right to, the Supreme Court is questioning. Why on Earth should we do anything other than say, thank you very much, get your money, and be quiet? Your Honor, all the county is asking for is that the court applies basic tenets of litigation practice. Where a statute of limitations can't be used as a sword to block a defense. The purpose of a statute of limitations is to be used as a shield against stale litigation. Is the reason your client didn't object to the Chapter 13 filing or go to the creditor's meeting because it read page A198, we're going to get paid. But now is having second thoughts about that. Two points. And in the Western District Bankruptcy Court, and in our reply brief, there's a case of Wazowski versus Ontario County, which is cited. And in that case, the bankruptcy judge in the Western District that sits in Rochester, held that in these types of instances, that a debtor can't claim an exemption. He called it an exemption by ambush, where it's basically buried in the schedules, and then it's raised- Well, this isn't buried. I mean, this is right in her application. So I'm not asking for a case, I'm just asking, is that why, you're a representative of the city. Is that why the city didn't oppose it and didn't attend the creditor's meeting? To finish the point regarding Wazowski is that the bankruptcy judge allowed in these types of instances where the exemption issue was teed up. As a key factor of a defense to an adversary proceeding, not seeking to challenge, to make the asset available for payment of creditors, simply to be used in an insolvency analysis, or simply to be used to determine a debtor's standing to pursue this type of a claim. So that was the ruling in the district up until this case, number one. Number two is, if we look at the timing of this, if we look at the timing of this, the adversary proceeding was filed, we were served on May 3rd. The meeting of creditors, or the 30 day window under 4003 expired on May 16th. So- No, but you still had 12 days. I did the math. You still had 12 days to file an objection. Our time to answer didn't expire until a week after the deadline to file an objection. My reading of Taylor, to be blunt, is too bad, so sad. Your Honor? Once you're out of time, there may actually be some equities on your side. If I was standing here saying that that annuity should be liquidated to pay creditors, you'd be absolutely right. But that's not what the county is asking for. The county is asking that that annuity should be included in the analysis two years prior to the bankruptcy filing. Which is a totally different point in time. The case you cited in our brief indicates that a bankruptcy filing is only indicative as to the state of fact as of the date of that filing. I'm going to ask you two, I suppose, housekeeping questions. One is, if the decision in Tyler comes out in a way that's adverse to the county's position. Even though the takings clause and excessive fines clause argument has not been raised in this case. That hasn't been raised in this case. But is the county going to consider that in this case or not? Well, Your Honor, that's something for the court to consider as far as the timing of this ruling. But what the county's going to need to consider is what the state of New York does in response to the ruling by the Supreme Court in the Tyler case. Because if the Tyler case indicates that the Minnesota scheme is unconstitutional, then the New York State Legislature is going to have to revisit Article 11. So, and in that case, if Article 11 is revamped to have surplus money proceedings, my opinion, I mean, obviously it's premature, my opinion would be that we'd be out of the fraudulent conveyance realm. We'd be right back under the BFP presumption where we'd be following the cases out of the Fifth Circuit that were cited in the Gonzalez case. That this court said, well, no, we don't follow the Fifth Circuit because there's no surplus money proceedings. Am I, so that's actually helpful. My second question is, is there an offer to settle for the amount? Your Honor, no. What happened was that the foreclosure was overturned by the trial court. And the debtors- Was there an, so part of what's going on here is this excess amount. Correct. Was there an effort to an offer to settle for the actual amount of the tax? No, Your Honor, because what happened here is the debtor had the opportunity to litigate due process arguments in state court. So what happened was after the foreclosure judgment was entered in March of 2017, the debtor filed an application in state court, as was her right, to challenge the foreclosure and undo the default. The debtor lost at the trial court and state court. It was appealed to the mid-level court, and then that decision was affirmed. In fact, that decision came down in February of 2019. Bankruptcy filed. Bankruptcy filing happened. So we'll hear from your friend on the other side. And you've reserved a minute for a moment. Good morning, Your Honor. Good morning, Mr. Pike. If it may please the court, my name is Zachary Pike. I'm with the Council for the Legal Aid Society of Rochester, New York. And I represent the debtor appellee, Corey Duval. I think, just off the bat, I wanted to handle some things that Mr. Dupond-Due said quickly, versus the Wisconsin case that he just cited. That was a previous bankruptcy court judge, and that case did not even cite Taylor, even though Taylor was the law. The current court has said that they're not following that, and that case has never been cited by any court. Throughout the land. I guess, I'm sorry, I'm not. The, maybe, does the court want me to focus on the exemption issue or go towards 550 and why that is actually applicable in this case, because that seemed a question that you had. So I want to admit a mistake that I first made on page 41 of my brief, where I meant to cite 522-I. I cited it as 522-H2-I-1. I missed the two. Because 522-I is important, because that's the recovery provision in the scheme. 522-H and 522-G work as the avoidance provision, and then as a standing provision to incorporate 522-H incorporates 522-G. 522-I states, excuse me, let me just quote it directly and correctly here instead of messing it up. If a debtor avoids a transfer or recovers a set off under subsection F or H of this section, the debtor may recover in the manner prescribed by, subject to the limitations of 550 of this title, the same as if the trustee had avoided the transfer. So there's no limitation there for exemptions. There's no limitation there for creditor claims. It is you can recover as a trustee would have with the limitations of 550, which is for the benefit of the estate. And I've detailed in my brief what a benefit of the estate could be. And it does not just help to the creditors. That sounds more like the old doctrine of diminutition, I'm sorry, I'm not going to pronounce that correctly, which was the old bankruptcy code pre-1978. That doctrine is not really in effect anymore. I can cite some cases that deal with that, if you would like me to. But it's just, there's more to bankruptcy than does it help the creditor. Yeah, basically the bankruptcy court looked at all the timing suggestions that were made by opposing counsel and said, nonetheless, at the time this transfer was made, the free requirements for the bankruptcy court that is sufficiently wrong as a matter of law that we should reverse it. Because if we don't, then the only question is the 550 question, which I think basically you have answered. There is no clear error by the court. There's no error regarding the law, regarding the exemptions under Taylor. In 4003B, the Supreme Court has stated it's strict. For if you want to change the validity of an exemption, you need to do it within that time frame. And the court was correct there. The only one who can make an exception for that rule is Congress. And that was specifically stated in Taylor, and they backed that up when 4003D was amended. Yeah, but the question is, was your client insolvent at the appropriate time? Now at that time she had no cash, but at that time she did have the right to an annuity. And the question is, was the annuity exempt? So do we look for the exemption of the annuity as of that time or as of the time the bankruptcy court decided whether there was an exemption or not? I've never seen a case that said what opposing counsel said, that you shouldn't look for exemptions at an earlier time, but that's the basic of her argument. Well, I think Taylor and 4003B is clear that you can't object after those 30 days, unless you ask for an extension. Which procedurally, if you go to the Western District, trustees who are examining these, I'm sorry, I've been off. Their argument is an odd one. It's not that they could have argued later for an exemption. It's that the relevant time is whether this annuity was sitting there a year or so earlier, which we now know is exempt, but at the time we didn't know. And so that in terms of a fraudulent transfer, we should look to that time rather than a later. Now, he doesn't cite me any cases for that. It's an interesting argument. I hadn't really even seen it in his brief, frankly. Yes, I view that as a kind of time travel argument where we are going back in time. But if the annuity is exempt now and it has not changed, its character has not changed, it's still an annuity. It wasn't a different asset that got converted in those two years, it's still exempt. And I would want to say that I stand behind the exemption that we claimed. Your argument really has to be that if we always looked at the time of insolvency, at the time a transfer occurred, to whether there were assets that might or might not be held to be exempt, we would be in a terrible mess. I mean, in the ordinary fraudulent transfer thing, somebody has some assets. We don't know if they're exempt or not. They give it to their spouse or something of that sort. And then at the time of bankruptcy, we go back, it wasn't really fraudulent because of these assets. We didn't know whether they were exempt or not. You say that argument can't be made. No, I mean, the annuity's the same. It's exempt in 2019, it's exempt in 2017. And Taylor did not specifically stand for the proposition that a court shouldn't look back to determine whether an exemption would have applied in the past. But why should we do it here? I should not do it. And Taylor was very specific regarding the, I'm sorry if I, I said you should not look back, right? Right. Taylor's very specific regarding the validity of the exemption. It was very focused on that. You can't challenge the validity of the exemption. In later cases in swab, it went into regard, looking at the value of the exemption in certain circumstances, but the validity still was not touched. And your position on your opponent's argument about section 522F, lien avoidance cases that he cites in that argument, is that Congress specifically created that exception. Yeah. But that's not the case here. Yes, he's trying to create an exception, but the only one who can per Taylor is Congress. In 2008, Congress did make an exception to 4003B and to 4003D, specifically for 22F cases. If you look at the legislative history of that amendment, it specifically says this is just for 522F cases. Everything else is still governed by 4003B. That's a very harsh rule. It is. I would like to think myself as normally flexible in life on a lot of things, but that rule is not flexible. As I learned with the RPTL and state court regarding foreclosures. I assume, presumably, the town would know that because it's presumably bankruptcy proceedings may often occur in connection with foreclosure proceedings. Whether they're for tax liens or other purposes. So presumably, the town would know about these deadlines or is used to responding to them, no? Yes, I think I made the point in my brief there, a sophisticated litigant, that they have filed exemptions to exemptions previously. In the Gonzales and Hampton cases that were here just last year, they filed exemptions or objections to exemptions in both those cases. May I ask you a housekeeping question along the lines of what I asked your friend? So, Tyler, you did not advance a takings award excessive fines clause argument, is that correct? I did not, you're on. I'm just. Which is fine. So, would a decision in Tyler shed any light or help us? I'm unsure, I've thought about this a little bit, but I haven't got too deep into it. So if they're not entitled. This is the time. I'm still, I want to pay the tax thing that was owed through the chapter 13 reorganization. So you want to pay the 42,000? Yeah. So the equity that they would no longer be allowed to, I don't think it really matters in this case. because I'm still through the chapter 13 plan and reorganization, I'm trying to pay them the tax they owe. If they're not allowed that. Now does he, I gather he doesn't know that. Okay, we'll hear from him. Well, it's in the chapter 13 plan that was served on them four years ago. And I think I want to point out again that this is a chapter 13, this is a reorganization. Chapter 13 is meant for debtors to come in and be able to keep their homes, right? That's one of the main things. The non-exempt property, which this partially would be coming back in, is still held by the debtor pursuant to 1306B, which states all properties remain in possession of the debtor. That, and just, I see my time's up. The last point that I just kind of want to make is, they will be prevented from getting the windfall, but they are going to get their tax being paid through this chapter 13 reorganization. They started their foreclosure to get their tax being paid. So they are going to get what they want. Let's hear from the county. Thank you, your honor. Your honor- Just pick up on what he just said about the 42,000. Yes, your honor. But what I wanted to bring up on rebuttal is that the line of lead avoidance case is that the county cites in its brief, talking about under 522F. Basically, there's a whole line of cases that were decided post-Taylor, but pre-4003D. But wasn't that a congressional exception? Your honor, however, there was a whole body of cases that did allow the claim of exemption to be asserted as a defense to a lien avoidance case. Prior to, in fact, the purpose of 4003D was there was a split amongst courts as to whether to apply a strict version of Taylor and not allow it. And then other courts, including the Southern District in Armonakis, which goes through a good history as to why this defense could be asserted. Speaking of history, one of the goals of the bankruptcy law is to secure a fresh start for the debtor. But you, in your brief and here at argument, you're talking, you seem to argue that the return of the property would only be appropriate where there's a benefit to the creditors. How do you square that idea with the bankruptcy, the whole purpose of the goals of the bankruptcy court? Isn't it to give a fresh start to the debtor? That also gets to Judge Calabresi's question in my initial argument, talking about the limitation of damages under 550. The purpose of a fresh start that the bankruptcy court really didn't consider all the factors that were evident in the record. This property was not the debtor's home. It was a property that had been in her family for some time, but the testimony at trial and in her deposition indicated it required extensive renovations in order to be habitable. Didn't she have a sister living in it, and her mother, and she inherited it? I don't believe it was necessarily an inheritance. But isn't all that exactly the kind of thing in which it did, a bankruptcy court has discretion, it looks at all the things. We can't possibly look at that. That is just where we follow what the lower court did, whether we think it might be more to one's benefit or not. Isn't that just what we do all the time in bankruptcy? In bankruptcy, however, your honor, that would be a determination of law as to what the appropriate remedy was under 550, which this court has authority to review de novo, so the whole record is open. Well, but if the bankruptcy court was correct in finding that this was also for the benefit of creditors, then there is no issue of law. If the bankruptcy court was incorrect of that, then there would be an issue of law. But if the bankruptcy court was correct in its general finding that in the context of this case, this benefits creditors, then we don't have an issue of law, do we? Well, no, your honor, because in this instance, the only party that benefited from the bankruptcy court's award of relief is the debtor. There was no benefit- No, you are saying that it's finding as to benefit for the creditors is so mistaken that we should not do what we normally do is listen to the bankruptcy court. But that's a different argument from the argument of law, which would be a very interesting and important one, that bankruptcy court said, no, this is just for the benefit of the debtor, and yet we still do it. That would be something we, of course, could review, but no vote. Thank you. And then getting back to the differences between notice requirements in Article 11, which the court has alluded to, and then the notice of filing an objection to an exemption. Is that under Article 11, the notices go out three months before the redemption deadline. They're sent by certified mail and first class mail. I'd like to go back. I'm sorry. Your main argument was that we should look to a year before and to whether this property was in fact exempt. Exactly. With opposing lawyer, I was troubled by what that would mean in the ordinary fraudulent transfer case, where a fraudulent transferor could always say, I didn't know there wasn't a finding a year earlier as to whether this property was exempt or not. And then having what you invited us to do in this case would be a disaster in the ordinary bankruptcy. It wouldn't be a disaster because the issue of insolvency is the debtor's burden to prove insolvency as of the date of the transfer, which in this case was two years prior to the bankruptcy filing. So on that burden of proof, the county would be entitled to defend that claim by raising the issue of insolvency, which would necessarily involve the analysis of exemptions as of this earlier time. But the town had that opportunity here, and it could have done. And let's assume the bankruptcy was filed a day at the time the foreclosure began. You would have had that same opportunity to claim, to challenge the exemption, you would have had it when you did and you missed the deadline, or you would have had it a year earlier. So I don't see how you win on that argument. A couple of points, a couple of points to your argument, is that the claim of exemption in this instance, the adversary proceeding was started in May, the window to object closed about two weeks later. The county, before the time for the county to answer, and but also- I don't understand how you would have been in a different position, had this bankruptcy been filed a year earlier, or two years earlier, or right around the time that you initiated the foreclosure, the NREM foreclosure for tax proceeding. I guess that's what I'm trying to understand. Okay, there would be a different case if the bankruptcy was filed right around the time of the foreclosure. Because if it was filed before the redemption deadline, we wouldn't even be here. The county would have submitted a proof of claim, gotten its taxes paid in the bankruptcy. But here we are, two years after the bankruptcy. But the redemption deadline would have been the same 30 days, whether it was filed in 2019 or 2017. No, the redemption deadline, the county serves notices by certified mail in October. So in this case, those notices would have come out in October of 2016, setting a redemption deadline of January of 2017. And then the debtor defaulted, the judgment was entered in March of 2017, which then gives the debtor state court remedies in order to challenge that. So- So wonderful. Well, as we like to say on the Second Circuit, we've kept you well past your time. And we'll reserve decision.